UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---------------------------------------------------------X
:
ENVOY TECHNOLOGIES, INC., :
:
        Plaintiff, :
:
:
:
   v. :
:
CUBIC CORPORATION, : **JURY DEMANDED**
:
        Defendant. : 24-cv-00220 (SRC)(CLW)
---------------------------------------------------------X

## ENVOY'S FIRST AMENDED COMPLAINT

Plaintiff, through its attorneys, for its First Amended Complaint against the Defendant, alleges:

## JURISDICTION AND VENUE

1. This is a cause of action for Copyright infringement arising under the Copyright Laws of the United States, 17 U.S.C. §101 et. seq. and for breach of contract.

2. Jurisdiction of the subject matter of this action is conferred on this Court by, at least, 28 U.S.C. §§ 1331, 1332, and 1338(a), and this dispute involves the Federal Question of copyright infringement, there is diversity of citizenship, and the dispute involves an amount well over $75,000.

3. This Court has personal jurisdiction over Defendant because transacts business within this district, derives substantial revenue from intrastate and interstate commerce and has committed tortuous acts within this district and also without this district having injurious consequences within this district, and Defendant is otherwise within the jurisdiction of this Court. In addition, this Defendant has contractually agreed to personal jurisdiction in this Court.

4. Venue is proper in this judicial district pursuant to, at least, 28 U.S.C. §§1391 and 1400(a).

## THE PARTIES

5. Plaintiff Envoy Technologies, Inc. (hereinafter "Envoy"), is a Delaware corporation with its principal place of business at 1115 Inman Avenue, Edison, NJ 08820, New Jersey.

6. Envoy is a software company that licenses, *inter alia*, a product known as XIPC. XIPC is comprised of a large number of modules and libraries, which together, make up an advanced software toolset for the development of multitasking and distributed enterprise applications. XIPC provides fault-tolerant management of guaranteed delivery and real-time message queuing, translation services, and other related messaging services.

7. Defendant Cubic Corporation is a Corporation having a principal place of business at 9233 Balboa Avenue, San Diego, California, 92123.

## FACTUAL BACKGROUND

8. Envoy is the owner by assignment of certain XIPC software and associated registered copyrights in the XIPC software. Copies of the Copyright Registrations are attached here as Ex. A.

9. Envoy and Cubic are parties to a Master Product Agreement ("MPA"), including an Original Equipment Manufacturer's ("OEM") Addendum, and a subsequently signed MPA Amendment ("Amendment") that amended the MPA (Collectively, the "License").

10. Although Cubic was not the original signatory to the License, Cubic acquired the original licensee, or alternatively received assignment of the License from the original licensee, and is subject to all of the rights and obligations of said License.

11. The MPA permitted Cubic to deploy to its customers, as part of Cubic's products, only a limited number of copies of XIPC software, and was strictly limited such that XIPC could only be used on computer systems with a single CPU, not larger, multi CPU type machines.

12. To help enforce the single-CPU restriction, in the OEM Addendum to the MPA, Cubic also agreed that prior to delivering any portion of the XIPC software to its customer, whether or not embedded in a Cubic product, it would contractually ensure that its customer would also comply with, *inter alia*, the single CPU

restriction:

> OEM [Cubic] will not deliver any Product(s) (including any portion of the Product(s) embedded in OEM's Applications) to any prospective customer without the prior receipt of a license agreement ("Deployment License") executed by the customer and reasonably satisfactory to Licensor [Envoy], and unless the Product(s) have been authorized by Licensor for the use, computers and platforms identified by the customer. OEM will promptly notify Licensor of any material breach of a customer license that comes to its attention and will terminate any breached license if the breach is not cured promptly after notice. (Dkt# 14-2, OEM Addendum, Section 8).

13. The annual fee prescribed is highly discounted due to the "Single CPU Computers" limitation in the License, allowing deployment only on relatively low-end single CPU computers.

14. After the License was signed, Cubic's predecessor indicated it no longer wanted to have a numerical limitation on the number of single CPU licenses it could convey to its customers. As a result, the parties negotiated the Amendment to the License in 2003, which allowed Cubic to grant an unlimited number of Single-CPU Deployment Licenses to its customers, without having to track or report on such Deployment Licenses. (Dkt# 14-2, last page).

15. While Cubic did not have to track or report to Envoy its Deployment Licenses, such Deployment Licenses were nonetheless still strictly limited to single CPU computers, pursuant to the License and the Amendment. (Dkt# 14-2, last page licensing "Unlimited XIPC Deployments for…single-CPU computers").

16. For years after signing the License and Amendment, Cubic and its

predecessors accepted quotes and paid invoices for the annual fees, all of which were clearly labelled with the explicit limitation that the fees were those for the limited right to use XIPC on "single CPU computers." Cubic simply agreed to the single-CPU quotes, and paid the single CPU invoices, never advising Envoy that it was not in fact complying with the single CPU limitation, thereby affirmatively misleading Envoy into believing it was complying. (Ex. B, sampling of such invoices).

17. Envoy also licenses XIPC for use on higher end computers that have multiple CPUs, but those licenses cost significantly more money than the what Cubic was paying pursuant to the parties' contract here. Cubic never sought to purchase the proper license for multiple CPU machines.

18. In or about 2022, Envoy learned from what appeared to be an inadvertent disclosure by a Cubic employee that Cubic had been using XIPC on many different types of computers, most or all of which are believed to have two, three or even more CPUs, and which are subject to significantly higher license fees that Envoy charges for such usage.

19. When Envoy approached Cubic to attempt to resolve the matter, Cubic simply refused to do so, or to engage in any meaningful discussion regarding its use of XIPC in a manner that violated, and continues to violate, the parties' contract and is copyright infringement.

20. As evidenced by Cubic's processing and paying Envoy's yearly quotes and

invoices, each of which expressly state Cubic was using and/or deploying XIPC on computers having only one CPU, Cubic was affirmatively and systematically concealing its violations of the parties' contract and copyright rights until Cubic's 2022 inadvertent disclosure. (Ex. B).

21. Cubic knew when it paid these invoices that it was representing to Envoy that it was compliant with the terms of the License, repeated in all the quotes and invoices for years, but Cubic concealed and/or misrepresented its actual use of the XIPC software, and that of its customers, which was unlicensed and/or breached the parties' license.

22. In addition, and upon information and belief, Cubic was running XIPC on its own systems that used multiple CPUs in order to be able to deliver Products to customers using multiple-CPU computers. Such use and testing by Cubic are themselves violations of the parties' License and Envoy's copyright rights. It is believed after a reasonable opportunity for discovery, the evidence will show such improper use by Cubic itself, as Cubic likely would have had to test and develop any software it was delivering to its customer on systems similar or substantially identical to the systems on which the customer would use XIPC.

23. Any statute of limitations has been tolled due to the discovery rule or to equitable tolling, or both, because Envoy was unaware of Cubic's violations due, at least, to the fraudulent misrepresentations of Cubic, detailed above herein, upon

which Envoy reasonably and justifiably relied.

24. Cubic knew of, and purposely concealed, these violations specifically to avoid additional/higher license fees and, upon information and belief, because the computers on which Cubic actually used and deployed the software would have required a much higher fee structure.

25. Cubic was also fully aware that it was contractually obligated, prior to supplying the XIPC software to its customers, to restrict the use by each of those customers to single-CPU computers only.

26. Through the requirement to sublicense its customers in a manner to comply with the MPA and Amendment, and through the License's requirement that Cubic enforce those sublicenses, Cubic had the right, the ability, and the contractual obligation, to control the use by Cubic customers of the XIPC software to ensure such use was within that permitted by the MPA and the Amendment.

27. Cubic's purposeful actions that directed and allowed its customers to use the XIPC software in an unlicensed and infringing manner, was to the profit and benefit of Cubic through Cubic's direct violations of the parties' license and Envoy's copyright rights.

## **FIRST CAUSE OF ACTION – BREACH OF CONTRACT**

28. Envoy repeats and re-alleges all of the above allegations as if fully set forth herein.

29. Cubic's own installation, use and testing of the XIPC software on multiple CPU machines is in violation of the parties' License and Addendum, which explicitly limited such activities to single CPU computers, in exchange for a much lower price.

30. Cubic's failure to enforce the sublicensing requirements of the License, which required Cubic to contractually restrict its' customers' use of XIPC to single CPU machines, is an additional breach of the parties' contract, and has resulted in damages, including at least those caused by Cubic's customers using the XIPC software outside the scope of any license, of which it is believed Cubic did not even make its customers aware.

31. Cubic has further breached the parties' contract by not paying any of the fees due at all for the past year, even at the reduced single CPU rate.

## **SECOND CAUSE OF ACTION – COPYRIGHT INFRINGEMENT**

32. Envoy repeats and re-alleges all of the above allegations as if fully set forth herein.

33. Upon information and belief, Cubic has installed, used and tested, and continues to install, use, and test, XIPC on multiple CPU computers in breach of the parties' License, and without a license allowing such use, and is thus liable for copyright infringement.

34. During the entire relevant time period, Cubic was well aware that the

License was limited to single CPU computers, and Cubic's copyright infringement has thus been knowing and with willful disregard for Envoy's rights.

### THIRD CAUSE OF ACTION – VICARIOUS LIABILITY FOR COPYRIGHT INFRINGEMENT

35. Envoy repeats and realleges all of the above allegations as if fully set for the herein.

36. Throughout the entire relevant time period, Cubic had the right, ability, and even the obligation, to supervise or control the infringing activity of its customers. More specifically, Cubic was required to, before providing the XIPC software to any potential customer, have such potential customer execute a customer license strictly limiting such potential customer's use of XIPC software to single CPU computers only.

37. Upon information and belief, had Cubic done so, many of its customers would not have purchased the Cubic product with the XIPC software, and Cubic would have lost the money it earned from such customers, because such customers needed to use the Cubic product with the XIPC software on multiple CPU computers.

38. Cubic thus had a direct financial interest in the customers purchasing the relevant Cubic products incorporating the XIPC software, and using them in multiple CPU computers, outside the scope of any license Envoy granted, and, therefore, in

an infringing manner.

39. Cubic had a direct financial interest in concealing from its customers the single CPU restriction, or order to gain more sales, so it provided the XIPC software knowing and desiring that it be used in an infringing manner.

40. Cubic is thus vicariously liable for the direct infringement of its customers that Cubic purposely supplied with the XIPC software for use on multiple CPU computers.

## FOURTH CAUSE OF ACTION – COPYRIGHT INFRINGEMENT BY INDUCEMENT

41. Envoy repeats and realleges all of the above allegations as if fully set for the herein.

42. Many of Cubic's customers, to whom Cubic supplied the XIPC software, used the XIPC software on multiple CPU computers without a license to do so, and thus infringed the XIPC copyrights.

43. Cubic knew at the time it supplied the XIPC software to its customers that the customers would use it on a multiple CPU computer, and that such use was not licensed and infringed Envoy's copyright rights.  Cubic also knew it had contractually obligated itself to restrict the customer's use to single CPU computers, but did not do so, in order to gain more sales, and with the intent that such customers would use the XIPC software in an unlicensed manner.

44. Cubic materially contributed to and induced the infringements of its

customers by purposefully providing the XIPC software to them without any restriction on its use under the parties' License, absent which the customers would not have been able to infringe Envoy's copyrights.

45. As a result of at least the foregoing conduct, Cubic is liable for contributing to and inducing the direct copyright infringements of its customers.

**WHEREFORE**, Envoy requests the Court grant the following relief:

A. An injunction, prohibiting Cubic, its employees, owners, members, agents, servants, related companies, and all persons and/or entities in privity with them, from infringing Envoy's copyrights in the XIPC software by using such software in its systems;

B. Damages under 17 U.S.C. § 504, in the form of statutory damages, profit disgorgement, actual damages, and attorneys' fees, as the Court deems appropriate and/or as elected by Envoy;

C. Damages for breach of contract, in an amount to be determined at trial;

D. An order requiring Cubic to deliver to Envoy any copies of any portions of the XIPC software in its possession, and destroy any on computer systems containing such copies if such software is not removed from them, including those copies Cubic or its predecessor installed on any customer computer systems;

E. Such other and further relief as the Court deems just and proper.

/s/ Jeffrey I. Kaplan

>Jeffrey I. Kaplan (JK 4706)
>**KAPLAN BREYER SCHWARZ LLP**
>317 George Street – Suite 320
>New Brunswick, New Jersey
>732-578-0103 x231
>jkaplan@kbsiplaw.com
>
>Michael R. Gilman  (*pro hac* to be filed)
>**KAPLAN BREYER SCHWARZ LLP**
>600 Third Avenue Second Floor
>New York, NY  10016
>646-571-2300
>mgilman@kbsiplaw.com
>
>*Attorneys for Plaintiff Envoy Technologies, Inc.*

August 23, 2024

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I hereby certify that the within matter in controversy is not the subject of any other action pending in any court, or of a pending arbitration proceeding. No other action or arbitration proceeding is contemplated and I know of no other parties who should be joined in this action at this time.

/s/ Jeffrey I. Kaplan
Jeffrey I. Kaplan (JK 4706)
**KAPLAN BREYER SCHWARZ LLP**
317 George Street Suite 320
New Brunswick, NJ  08901
JKaplan@kbsiplaw.com

*Attorneys for Plaintiff Envoy Technologies, Inc.*